Virginia M. **KIRSCH** et al., Petitioners,

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM,** Respondent,

and

Society Corporation, Intervenor.

No. 16180.

United States Court of Appeals Sixth Circuit.

Dec. 8, 1965.

See, also, 6 Cir., 337 F.2d 409.

Henry W. Stark, Cleveland, Ohio, for petitioners.

J. F. Bishop, Dept. of Justice, Washington, D. C., for respondent, John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., on the brief.

James A. Weeks, Cleveland, Ohio, for intervenor, James A. Weeks, Owen F. Walker, Malvin E. Bank, Cleveland, Ohio, on the brief.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

HARRY PHILLIPS, Circuit Judge.

The Board of Governors of the Federal Reserve System approved the application of Society Corporation of Cleveland, Ohio, to become a bank holding company under 12 U.S.C. §§ 1841–1848, and to acquire control of the Fremont Savings Bank of Fremont, Ohio. Petitioners have filed a petition for review, asking that the decision of the Board be annulled and set aside.

This court has jurisdiction under 12 U.S.C. § 1848. Whitney National Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed. 2d 386; The Marine Corporation v. Board of Governors, etc., 325 F.2d 960 (C.A.7); First Wisconsin Bankshares Corp. v. Board of Governors, etc., 325 F.2d 946 (C.A.7); Northwest Bancorporation v. Board of Governors, etc., 303 F.2d 832 (C.A.8).

Following an earlier hearing, we denied the motion of petitioners to stay and postpone the effective date of the Board's order and granted leave to Society Corporation to intervene. Kirsch v. Board of Governors, etc., 337 F.2d 409 (C.A.6).

Society Corporation ("Intervenor") owns all of the shares' except directors' qualifying shares of Society National Bank of Cleveland ("National"). National conducts a general banking business as a national bank, with its head office in Cleveland and fourteen branches in Cleveland and Cuyahoga County.

Intervenor was organized in 1958 under the laws of Ohio for the purposes of facilitating the acquisition by National of the assets of the Society for Savings in the City of Cleveland. The latter institution was a mutual savings bank incorporated in 1849 by special act of the Ohio legislature (47 Ohio L. 279), which carried on business in Cleveland until December 31, 1958, when it commenced dissolution and its assets were transferred to National. The dissolution of this mutual savings bank was accomplished under the judicial supervision of the Common Pleas Court of Cuyahoga County pursuant to Ohio law. Dissolution was granted in a comprehensive opinion dated December 21, 1961, and reported under the style In the Matter of the Dissolution of Cleveland Savings Society, Ohio Com.Pl., 192 N.E.2d 518, to which reference is made for factual details. for factual deatils-raalar( r.K.     bgkP Intervenor's voting shares are held under a voting trust which, unless sooner terminated by the trustees, will continue until December 31, 1968, when they will be exchanged for presently-outstanding voting trust · certificates representing such common shares.

Petitioners maintain this action as record owners of voting trust certificates issued by intervenor evidencing the equitable ownership of 24 and 11/500ths of intervenor's 561,656 outstanding shares. They also were members of the Cleveland Savings Society and were parties to the State court litigation involving the dissolution of that mutual savings bank. They did not perfect an appeal from the State court decision.

Fremont Savings Bank is located in the City of Fremont in Sandusky County, Ohio, some eighty-five miles from Cleveland. It was originally organized as a savings bank in 1882, was converted to a state-chartered commercial bank in 1934 and has since conducted a general banking business.

Upon the filing of intervenor's application, the Board gave notice and furnished copies to the Superintendent of Banks of the State of Ohio, the Comptroller of the Currency, and the Anti-Trust Division of the Department of Justice. The Superintendent of Banks neither recommended nor approved the application, but raised certain questions for consideration by the Board. The Comptroller of the Currency approved the application. No objection or comment was made by the Anti-Trust Division of the Department of Justice.

Notice of the application was published in the Federal Register. 29 Fed.Reg. 3182–83. Prior to this publication, the Board notified counsel for petitioners of the filing of the application.

Petitioners filed with the Board a detailed memorandum, stating their opposition to the granting of the application. Among other things petitioners contended that the Board should require intervenor, at its own cost, to effect personal service on some 64,000 owners of voting trust certificates, informing them of the complete terms of the proposal contained in the application; and that a public hearing be held in Cleveland, with opportunity for discovery, all at the expense of intervenor or its officers and directors and the voting trustees.

The Board granted the application without holding a public hearing, setting forth its reasons in a detailed statement. One member dissented. The statement of the Board contains a summary of facts relating to the five statutory factors which the Board is required to consider in acting upon such an application.[1] The

1. 12 U.S.C. § 1842(c): "In determining whether or not to approve any acquisition or merger or consolidation under this section, the Board shall take into consideration the following factors: (1) the financial history and condition of the company or companies and the banks concerned; (2) their prospects; (3) the character of their management; (4) the convenience, needs, and welfare of the communities and the area concerned; and (5) whether or not the effect of such acquisition or merger or consolidation would be to expand the size or extent of the bank holding company system involved beyond limits consistent with adequate and sound bank-

Board made affirmative findings to the effect that all five of these factors have been satisfied in this case and that "it is the Board's judgment that the size or extent of applicant's system as proposed would be consistent with adequate and sound banking, the public interest, and the preservation of banking competition."

■ Petitioners contend that the Board violated their constitutional rights by refusing to grant their request for a public hearing. The Act does not require a hearing unless the proposed acquisition is disapproved in writing by the Comptroller of the Currency in the case of a national bank, or by the state bank supervisory authority in the case of a state bank. 12 U.S.C. § 1842(b). In the present case the Comptroller of the Currency expressly approved the application and the Ohio Superintendent of Banks did not disapprove it.

The legislative history demonstrates the clear intent that a public hearing is not required unless either the Comptroller of the Currency or the state supervisory authority expresses written disapproval.[2]

■ Under the facts and circumstances of the present case, and especially in view of the documentary evidence affirmatively supporting the five statutory factors (see footnote 1), we hold that the Board neither abused its discretion nor violated any constitutional rights of petitioners in granting the application without a public hearing. Northwest Bancorporation v. Board of Governors, etc., supra, 303 F.2d 832, 843 (C.A.8).

Petitioners further contend that the decision of the Board is unsupported by substantial evidence and unwarranted by the facts. To the contrary we find the decision of the Board on the five statutory factors to be supported by clear and convincing evidence.

Much of petitioners' argument in this court and much of the opposing memorandum which they filed with the Board

ing, the public interest, and the preservation of competition in the field of banking."

2. Senate Report No. 1095 on S. 2577, 84th Congress 2nd Session, 1956 U.S.Code Congressional and Administrative News, pp. 2482, 2490, contains the following language:

"DECISION ON APPLICATION

"The bill contemplates that any Federal Reserve Board approval required under its provisions will be sought by application to the Board. Some advocates of bank holding company control legislation thought that the bank supervisory authorities (State or Federal Comptroller of the Currency, as the case might be) ought to be given the right to decline such an application, regardless of the opinion of the Federal Reserve Board. Other advocates of such legislation urged that the power of decision be placed in the Federal Reserve Board, with the bank supervisory authorities playing only an informal consulting role. This bill represents a compromise between those two positions. It affords the bank supervisory authorities an opportunity to file with the Federal Reserve Board a formal recommendation that the application be denied. But it also provides that *if such a recommendation is made, the Federal*

*Reserve Board must provide a hearing of record* after due notice at which the testimony of all interested parties may be received, including, of course, the applicant and the disapproving bank supervisory authority. After this hearing on the merits of the application has been held, the Federal Reserve Board is required to grant or deny the application by formal order. The bill then affords any party aggrieved by the order the right to a judicial review of the order by an appropriate Federal court of appeals. In such a review, the Federal Reserve Board's findings of facts are conclusive, if supported by substantial evidence.

"This procedure, it appears to your committee, should afford opportunity for developing the true merits of an application upon due consideration of the facts, in instances where the bank supervisory authority involved expresses written disapproval of the application. It also assures adequate recourse to court proceedings for an aggrieved party.

"At the same time, it leaves the Federal Reserve Board free *to proceed in a more informal manner in handling an application as to which the appropriate bank supervisory authority expresses no written disapproval.*" (Emphasis supplied.)

are devoted to (1) a contention that the terms of the proposed exchange of shares were not in the best interest of petitioners as minority holders of voting trust certificates and (2) a reargument of matters previously adjudicated by the Court of Common Pleas of Cuyahoga County In the Matter of the Dissolution of Cleveland Savings Society, supra, 192 N.E.2d 518. The Ohio court wrote a comprehensive opinion in that case, comprising thirty pages in Northeastern Reporter, in which it dealt at length with seven issues raised by petitioners and others.

Among other things the Ohio court held that the sale of the assets of Cleveland Savings Society to Society National Bank was undertaken and carried out in accordance with Ohio law and that "this Court cannot find from the evidence one instance of an abuse of the fiduciary relationship, or of any self-dealing or misconduct on the part of any of the Members, Trustees and Officers of Society, or on the part of any of the Directors, stockholders and Officers of National. This Court finds that these men acted in good faith and for the best interests and welfare of the depositors and Society." 192 N.E.2d at 526.

The Ohio court further pointed out that:

"It is not likely that either the Superintendent of Banks or the Comptroller of the Currency would have approved or allowed the transaction to be completed if he had felt that the depositors of Society would have been harmed. Both had ample power to stop it. The record is clear that both were fully informed, actively participated to the extent required of them and in fact stated that in their opinion consummation of the Plan would benefit everyone including depositors.

"From a review of the evidence it is clear that the transaction inured to the benefit of the depositors of Society." 192 N.E.2d at 529–530.

The Ohio court expressly reserved jurisdiction to consider, modify and approve all amendments to be made to the voting trust agreement and the plan of distribution, as well as the trust to be created with respect to unclaimed deposits. The court further reserved jurisdiction "over all other matters which may hereafter arise in connection with the dissolution proceeding, excepting only the seven issues herein considered." 192 N.E.2d at 548.

With respect to issues litigated in the State courts the majority statement of the Board made the following comment:

"Finally, Opposers have requested the Board in the course of its decisional process, to review the State of Ohio courts' records relating to the proceedings involving the dissolution of Society for Savings, and the courts' approval of the plan of distribution of the Society for Savings' surplus funds. A reading of the courts' decisions in the above proceedings makes clear that a major portion of the issues litigated have no bearing on the issues raised by the application now before the Board. Implicit in Opposers' request of the Board that it review the judicial proceedings incident to the dissolution of Society for Savings, and the distribution of its surplus, is the suggestion that wrongful and undue advantage has been taken of Opposers by the managements and directorates of the institutions involved in the proposal before the Board, and that the Board's approval of the application would further disadvantage the Opposers. The Board is neither required nor warranted in looking behind the decisions of the Ohio courts but, rather, must and does accord full faith and credit to those decisions."

We find nothing in the Bank Holding Company Act of 1956 requiring the Board to exercise jurisdiction with respect to differences concerning corporate policy between a corporation and its

minority shareholders or minority holders of voting trust certificates.

If the intervenor, its officers or directors or the voting trustees have failed to follow the correct procedures or policies or have committed unlawful acts, to the detriment of minority owners of voting trust certificates, generally these are matters to be litigated in the courts of Ohio. Indeed, it would appear that the Court of Common Pleas of Cuyahoga County has reserved jurisdiction over such issues by the express terms of its opinion In the Matter of the Dissolution of Cleveland Savings Society, supra.

The decision of the Board is affirmed.